UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-140-B-W |
| | ) | |
| DAVID G. YOUNG | ) | |

ORDER ON MOTION *IN LIMINE* AND PRETRIAL
NOTICE OF INTENTION UNDER RULE 404(b)

With trial looming in its prosecution of David G. Young for alleged conversion of government money and false statements in connection with income tax returns, the Government moves *in limine* to determine pretrial the admissibility of evidence it contends is intrinsic to the crimes charged and, if not, is admissible under Rule 404(b). *Mot.* in Limine *and Pretrial Notice of Intention Under Rule 404(b)* (Docket # 62) (*Gov't's Mot.*). Mr. Young objects. *Def.'s Reply to Gov't's Mot.* in Limine *and Pretrial Notice of Intention* (Docket # 69) (*Def.'s Reply*). There are three highlighted evidentiary issues: first, involving Mr. Young's activities before September 9, 2004, the period outside the statute of limitations; *see Order Affirming in Part and Rejecting in Part the Recommended Dec. of the Magistrate Judge* (Docket # 54); second, involving Mr. Young's use of converted funds to support his mistress; and, third, involving Mr. Young's misuse of a government credit card while he was in the United States Air Force. *Gov't's Mot.* at 5-13. The Court grants the motion in part and denies it in part.

I.   DISCUSSION

   A.   Admissibility of Events Outside the Statute of Limitations

The Government seeks to admit a series of pre-September 9, 2004 events under two alternative theories: first, that the evidence is intrinsic to the crime of conversion and falls

outside the purview of Rule 404(b); and, second, that if the evidence is not intrinsic to the crime, it is admissible under Rule 404(b). *Gov't's Mot.* at 5-8. The Government's proffered evidence includes, for example, that Mr. Young handled his mother-in-law's financial affairs before she died, that he took her name off a joint account and merged it with another account he had in his name, that Government money was deposited in the joint account, and that he withdrew money from that account for his own use, all before September 9, 2004. *Id.* at 6-8.

Turning to the first theory, the Government cites *United States v. Anzalone*, 783 F.2d 10, 11 (1st Cir. 1986) in support of its contention that pre-statute of limitations evidence is admissible if it is intrinsic to the elements of the crime of conversion. In *Anzalone*, the First Circuit charged the defendant with engaging in a mail fraud scheme and some of the evidence included events that took place before the five year statute of limitations. *Id.* The Government contends that *Anzalone* stands for the proposition that events that predate the statute of limitation may be admissible to prove the elements of the crime if the evidence is intrinsic to the crime itself. *Gov't's Mot.* at 5-6. Specifically, the Government characterizes *Anzalone*:

> The Government sought to admit the evidence on the theory that as long as the "modus operandi indicate[d] an identity of scheme," the evidence was admissible as intrinsic evidence outside the purview of Rule 404(b). The First Circuit indicated that it would bypass a Rule 403/404(b) analysis only in the cases of a conspiracy or "a crime 'that is so interwoven with the charged crime that it is impossible to prove one without revealing the other.'" The trial judge in *Anzalone*, although persuaded by the Government's argument, wisely "touch[ed] all the bases," admitting the evidence as *both* intrinsic to the crime charged and as relevant under Rule 404(b) and not unfairly prejudicial under Rule 403. The First Circuit found no abuse of discretion.

*Id.* at 6 (internal citations omitted). Mr. Young responded that he was unable to find the Government's quoted language in *Anzalone* and that, in any event, *Anzalone* reaches a different conclusion on the admissibility of pre-statute of limitations evidence that is intrinsic to the

2

charged crime, resolving instead that pre-statute of limitations evidence would not be admissible under this theory. *Def.'s Reply* at 5, 5 n.2.

The Court agrees with Mr. Young that, based on *Anzalone*, pre-September 9, 2004 evidence is not intrinsic to the charged crime and therefore not immune from Rule 404(b) analysis. Contrary to the Government's interpretation of *Anzalone*, the Court reads the First Circuit as disagreeing with the contention that "evidence of events extending back in time beyond the statute of limitations period may be admissible to prove a continuing fraudulent scheme, as charged in the indictment."[1] *Anzalone*, 783 F.2d at 11. The First Circuit wrote:

> The government apparently feels that since evidence of events extending back in time beyond the statute of limitations period may be admissible to prove a continuing fraudulent scheme, as charged in the indictment, such evidence is not proof of 'prior bad acts' falling under the requirements of Rule 404(b). *We do not agree.*

*Id.* (internal citation omitted; emphasis supplied). In *Anzalone*, the First Circuit disagreed with the same contention the Government is pressing here, namely that pre-statute of limitations evidence is admissible without reference to Rule 404(b).

Further, for purposes of this case, the Court is concerned that if admitted without a Rule 404(b) limitation, there is the possibility of juror confusion about whether they may convict Mr. Young for events outside of the statute of limitations. The Court preliminarily determines that the pre-September 9, 2004 evidence is not admissible to prove that Mr. Young committed elements of the offense during the period beyond the statute of limitations.

However, the Court agrees with the Government regarding the admissibility of evidence prior to September 9, 2004 under Rule 404(b). Rule 404(b) allows for the admission of evidence of other crimes, wrongs, or acts "as proof of motive, opportunity, intent, preparation, plan,

---

[1] Like Mr. Young, the Court could not find in *Anzalone* the language that the Government extensively quoted from *Anzalone* in its memorandum. *Gov't's Mot.* at 6.

3

knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence is not admissible to prove the character of the defendant in order to "show action in conformity therewith." *Id.* In *Anzalone*, the First Circuit concluded that evidence of the defendant's actions outside the statute of limitations period was deemed admissible under Rule 404(b) to prove "intent, . . . plan, knowledge, . . . or absence of mistake". 783 F.2d at 11 (quoting Fed. R. Evid. 404(b)). "Such evidence of intent and plan may be admitted unless 'unfair prejudice substantially outweighs its probative value'." *Id.* (citation omitted).

Even if such evidence is potentially admissible under Rule 404(b), Mr. Young objects on the ground that its prejudicial impact substantially outweighs its probative value. *Def.'s Reply* at 6-7. Although Rule 403 determinations are best left for trial, the Court preliminarily determines that the pre-September 9, 2004 evidence the Government seeks to admit is more probative than prejudicial.[2] Under *Anzalone*, the Court agrees that evidence of Mr. Young's activity before September 9, 2004 is admissible under Rule 404(b) to the extent it demonstrates his "motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident."[3] Fed. R. Evid. 404(b).

### B.   David G. Young's Alleged Payments to His Mistress

The Government says that from December 5, 2000 to February 14, 2004, Mr. Young wrote nineteen checks totaling $4,578.88 from his joint account to his mistress, Pauline Godin (later Pauline Evans) using monies he converted from the Government. *Gov't's Mot.* at 9. The Government claims that Mr. Young "needed extra money to maintain a separate residence so that he could carry on his affair with Ms. Godin." *Id.* The Government worries that Mr. Young is

---

[2] One possible exception is evidence that on April 29, 2004, the Defendant's debit card company froze activity on his debit card, because it considered the activity suspicious. *Gov't's Mot.* at 7. The Court is unclear about how this evidence relates to the allegedly fraudulent scheme and why the credit card company's suspicions about Mr. Young's activities would be admissible.
[3] Upon Mr. Young's request, the Court will give the jury a limiting instruction on how they may use this evidence.

going to testify that he "thought he was entitled to his wife's mother's benefits and that he used the money to take care of his wife." *Id.* Mr. Young objects, contending that the evidence would be more prejudicial than probative. *Def.'s Reply* at 8 (stating that Mr. Young "cannot simultaneously defend himself against charges that he is both a thief and a bad husband").

To the extent the Government is seeking to admit this evidence in its case-in-chief, the Court readily agrees with Mr. Young that "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The Government's evidence anticipates a defense, which Mr. Young may or may not press.

Whether the evidence is admissible on rebuttal depends on two factors: what Mr. Young says and whether a direct line can be drawn between the Government funds deposited in his account and the funds he paid Ms. Godin. Regarding the latter question, Mr. Young implies that the evidence may not demonstrate that he used Government funds to pay Ms. Godin. *Def.'s Reply* at 8. This is a foundational issue and before the Government seeks to introduce such evidence, the Court will hold a brief hearing outside the presence of the jury to determine whether the Government has a sufficient evidentiary foundation to proffer the evidence of payments from Government funds to Ms. Godin.

Regarding the former question, in view of the moral opprobrium often associated with philandering, the Court is leery about admitting evidence of his alleged marital infidelity. The risk is that the jury will be distracted from whether he committed the charged crimes and will convict Mr. Young because they do not approve of his morals. Nevertheless, if Mr. Young opens this door, the Court will likely allow the Government to respond in kind. Thus, the admissibility of this evidence will depend on precisely what his counsel argues or what Mr. Young says if he takes the stand. If he asserts, as the Government contends, that he thought he

had a right to the Government money, because he used it solely to support his wife, the Government will be allowed to introduce evidence that he actually used the money for other purposes.

Whether the Government will be allowed to introduce evidence that the payments went to his mistress Ms. Godin depends upon whether he or his attorney attempts to paint Mr. Young as the good husband, and attempts to prove that his continued receipt of Government money is justified by spousal devotion. If the Defendant fairly raises this issue, the Government will be allowed to rebut Mr. Young's self-characterization.[4]

Before cross-examining Mr. Young on this issue, the Court will require the Government to come to sidebar and obtain final ruling as to whether the evidence presented at trial justifies the use of this evidence for impeachment purposes.

### C.   Nonjudicial Punishment Proceedings

In its motion, the Government indicated an intention to introduce evidence that in February 1993, just before he retired from the United States Air Force, Mr. Young "went through 'Nonjudicial Punishment Proceedings' in which he was charged with wrongful appropriation of about $2,000." *Gov't's Mot.* at 10-11. According to the Government, the Air Force investigation revealed that he "had received approximately $5,200 in cash advances on his government issued credit card. The card was to be used for official government travel only, and the card was not to be used for personal expenses." *Id.* at 11. The Government asserts that Mr. Young's written statement to the Air Force after he was caught misappropriating funds is "strikingly similar to his written statements made after he was caught misappropriating his

---

[4] The Court urges the Government to tread lightly here. This is a criminal case for alleged conversion of Government money and making false statements in connection with tax returns; it is not a divorce proceeding, a spousal abuse case, or an alienation of affection tort. The Government must be careful not to attempt to play to the disregard many people have toward people who are unfaithful to their spouses, since Mr. Young is not charged with infidelity.

mother-in-law[']s benefits.  He admits and rationalizes his behavior but denies knowledge of the wrongfulness of his actions." *Id.* at 12.  The Government says the prior episode is admissible under Rule 404(b).  Mr. Young objects.  *Def.'s Reply* at 8-9.  He says that the Government "wants to show that Defendant was dishonest in 1993 so the jury will believe he was dishonest in 2004." *Id.* at 9.  Further evidence related to use of a business credit card are, in Mr. Young's view, dissimilar to the conduct charged in this case.  *Id.*

The Court agrees with Mr. Young.  Applying Rule 403, the Court concludes that evidence of what happened in 1993 with a government credit card runs "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

### D. Conviction by Non-unanimous Verdict

In his Reply, Mr. Young raised the concern that if evidence of events before September 9, 2004 is admitted, a jury could convict him based on events that took place outside the applicable statute of limitations.  *Def.'s Reply* at 10-11.  The Court disagrees.  The Court intends to instruct the jury that to convict Mr. Young, it must conclude that he committed all the elements of the crime of conversion of Government money on or after September 9, 2004, and that evidence of events before September 9, 2004 is admissible only for Rule 404(b) purposes.  The Court does not view this limiting instruction as unusually complex or difficult for the jury to follow.

## II. CONCLUSION

The Court GRANTS the Government's Motion *in Limine* in part and DENIES it in part (Docket # 62).  The Court DENIES the motion to the extent the Government seeks to admit evidence of events before September 9, 2004 as intrinsic evidence of the Defendant's commission of the crime of conversion of Government money on or after September 9, 2004.

7

The Court GRANTS the Government's motion to the extent the Government seeks to admit evidence of events before September 9, 2004 under Rule 404(b).  The Court DENIES the Government's motion to the extent it intends to introduce evidence in its case-in-chief of Mr. Young's alleged use of Governmental proceeds to pay money to his mistress, and ORDERS the Government to give fair notice before seeking to admit such evidence in cross-examination or rebuttal.  The Court DENIES the Government's motion to admit evidence of the Defendant's misuse of a Government credit card while he was in the United States Air Force in 1993.

      SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2010